THOMAS M. SHAY ET AL., PROSECUTORS, v. TOWNSHIP OF DELAWARE AND EDWIN S. DICKERSON, JR., DEFENDANTS.

Submitted January 17, 1939—Decided March 29, 1939.

Before Justices CASE and PORTER.

For the prosecutors, *Patrick H. Harding.*

For the defendants, *Ralph W. Westcott* and *Wilfred B. Wolcott.*

The opinion of the court was delivered by

CASE, J. The writ brings up the assignment of a certificate of tax sale covering approximately sixty-four acres of land, with buildings, owned by Thomas M. Shay and in which the remaining prosecutors have interests which are not all clearly described but which may be regarded as flowing from the owner. On April 20th, 1936, the township collector of the township of Delaware sold the property to the township

for unpaid taxes and assessments for the years 1929 to 1934, inclusive, amounting, with the charges thereon, to $21,594.23. The legality of the sale and of the certificate of sale is not in dispute. Therefore the cases which hold that when a municipal corporation has undertaken to sell real estate for taxes the sale will be set aside unless all conditions precedent appear to have been performed have no application. Prosecutors had, and still have, the right of redemption; but they have not paid any of the taxes or accumulated charges represented by the certificate, they have not paid any of the subsequent taxes, and they have not tendered the sum necessary to redeem. Consequently, the lenient attitude of the courts toward one who would redeem his property by paying the arrears in taxes, with incurred costs, is not invoked.

On April 2d, 1937, the township assigned the tax sale certificate to Edwin S. Dickerson, Jr., and the question before us, as stated by the prosecutors, is this: "Is the sale or assignment of the tax certificate in question by the township of Delaware to Dickerson a valid one?" A secondary question which we think should be added is whether the invalidity, if there be such, is one of which the prosecutors may avail themselves.

Mr. Dickerson, on April 25th, 1938, filed a bill in Chancery (*R. S.* 1937, 54:5-85, *et seq.*) to foreclose the right of redemption. To that bill the present prosecutors interposed an answer which automatically (*R. S.* 1937, 54:5-101) stayed the proceedings in Chancery for a period of four months, with privilege to the owners during that time to sue out a writ of *certiorari* "to review the legality of the tax or other municipal lien." Within the designated time the present writ was allowed. We doubt whether the matters brought up by the writ are within the purview of the statute; but the issuing of a writ of *certiorari* has other than statutory authority and we shall decide the issues as presented.

Prosecutors' points are: First, that the assignment of the tax certificate to Dickerson was invalid because it was not an integral part of any comprehensive refunding program of the municipality and that the township did not receive the consent of the holders of at least eighty-five per centum of

the outstanding bonds for a comprehensive refunding program; second, that the act entitled "An act concerning municipal finances," being chapter 340, *Pamph. L.* 1931 (*R. S.* 1937, 52:27-2, *et seq.*), is a private or special act and therefore unconstitutional; and, third, that the assignment was without adequate or legal consideration.

The first point is based upon chapter 265, *Pamph. L.* 1936 (*R. S.* 1937, 52:27-29.2), which is an amendment to the 1931 Finance act, *supra,* and is the statute under which the township committee entered upon the assignment transaction. It provides that "any municipality in which the Municipal Finance Commission is functioning may, with the approval of the commission, accept its own bonds * * * in payment of all or any part of the purchase price of tax title liens and assessment title liens held by said municipality * * * and may exchange such tax title liens and assessment title liens * * * for such bonds at such times and for such prices as the governing body of such municipality shall determine, subject to the approval of the Municipal Finance Commission. * * * No municipality may avail itself of the authority contained in this section for the acceptance of bonds in payment of the purchase price of * * * tax title liens and assessment title liens except that the sale of such property and liens shall be an integral part of the comprehensive refunding program, which program shall have received the consent of the holders of at least eighty-five per centum of the amount of bonds outstanding." The township of Delaware was in default in its bond obligations, and its finances had, by judicial order, been placed in the control of the Municipal Finance Commission under the 1931 statute. The township committee, having acquired the tax sale certificate, resolved to assign that certificate together with 1935 and 1936 taxes to Mr. Dickerson for the consideration of $15,000, face value, in past due bonds of the township, plus cash payment for the accrued portion of 1937 tax. The Municipal Finance Commission gave its approval. The transaction was in accord with a plan which the township had pursued for several years whereby defaulted township bonds and notes were liquidated by receiving them, with interest waived, in

settlement or partial settlement of taxes and assessments. There is positive testimony that the township had secured the consent of eighty-five per centum of the bondholders to that plan, and, lacking clear contradiction, we find that to be the fact. The plan, in operation, resulted in an annual receipt and cancellation by the township of its defaulted notes and bonds in rather large volume. The total amount of bond settlements accepted during the years 1933 to 1938, inclusive, appears to be the sum of $551,961.89. The plan thus adopted and pursued by the township for relieving its financial distress may hardly be called, with technical accuracy, a comprehensive refunding program. But it was, we think, within the spirit of the statute. It was clearly directed toward the end which the statute was designed to accomplish; this, particularly, in view of the testimony of Edmund D. Bowman, auditor of the Municipal Finance Commission, that the total indebtedness of the township was so high as to prohibit a comprehensive refunding plan and that the bond settlement plan was resorted to for the purpose of reducing the bonded indebtedness to the extent that a refunding plan could be adopted and made to operate. The conditions which were imposed in the 1936 amendment were not for the protection of the title owner; they were, in our interpretation, for the protection of the holders of the defaulted bonds and to make certain that the program was one of substantial merit in leading a municipality out of the financial straits into which it had come by reason of the non-payment by property owners of their taxes. Prosecutors were strangers to the objective of the statute and unless they can show a right of which they were deprived we find no just cause for complaint by them either under the 1936 amendment or because of the validating statute next mentioned.

The legislature, on June 4th, 1938, enacted chapter 301 of the Pamphlet Laws of that year which provided that "all assignments of certificates of sale for unpaid taxes, assessments or other municipal liens heretofore authorized by resolution of the governing body of any municipality in this state and made in pursuance of such resolution, and all pro-

ceedings had thereunder, are hereby ratified, confirmed, validated and in all respects declared legal and effectual." That statute, if effective, validates the assignment. Prosecutors assert that the statute is unconstitutional as to them for the reason that it results in the taking of their property without due process. If the factual statement were correct, the legal consequence would follow. But prosecutors do not demonstrate, and we do not perceive, that the statute, or the assignment to which it relates, takes any of their property. The taking, such as there has been, was by the original tax sale, which is not questioned. The township could have foreclosed, just as its assignee has undertaken to do. The fact that the thing taken has, under statutory authority, been put in commerce does not add to or detract from the original taking. The property was sold, by lawful proceedings, for unpaid taxes. Prosecutors had the right to redeem. They still have that right. We conclude that the statute does not deprive prosecutors of any property or property right. That being so, and the transaction being one made in good faith and, as we shall find, for a valuable and adequate consideration, between the township as seller and defendant as buyer, we see no sufficient reason for holding that the legislature could not validate the transaction, as against prosecutors, notwithstanding the financial scheme of which it was a part was not a comprehensive refunding program.

No argument is presented in support of the second point. We consider that the point is not well made. The constitutionality of the statute was passed upon by the Court of Errors and Appeals in *Hourigan* v. *North Bergen Township,* 113 *N. J. L.* 143. *Cf. Hetrick* v. *Roberts,* 117 *Id.* 584; *affirmed,* 118 *Id.* 586. The statute has been considered and given effect in a number of cases as *e. g., In re Little Ferry National Bank,* 13 *N. J. Mis. R.* 114.

Prosecutors thus state their third point: "The said sale or assignment of said certificate from the township of Delaware to Edwin S. Dickerson was not in conformity with the statute in such case made and provided, and was absolutely void and illegal in that said sale was for an inadequate and

illegal consideration; and said sale of said certificate was for a sum less than the amount charged against the land or real estate above mentioned, even though the value of the land was far in excess of the taxes and assessments due on said lands." That sentence serves as both point and argument, for we find nothing further in the brief by way of support. The bonds at the time of the delivery were selling at $58 upon the hundred, and it is probable that Dickerson bought at about that figure. If prosecutors should redeem as permitted by law, we may assume that Dickerson would reap a profit therefrom. But before Dickerson engaged in the venture, he stated that he would not take over the tax sale certificate if Judge Shay wished to redeem. Judge Shay, son and agent of the titleholder and himself one of the prosecutors, was thereupon informed of the amount for which and the manner in which the tax lien could be settled and sale of the necessary bonds was proffered. No interest in the suggestion was manifested by or on behalf of any of the prosecutors, and thereafter the bonds were sold to Dickerson and the assignment of the tax sale certificate was effected. Prosecutors were given the opportunity to settle with the township upon the precise terms at which Dickerson bought. After the acquisition by Dickerson they had exactly the legal status which they originally occupied, that of property owners whose property had been lawfully sold for taxes and who had the right to redeem in accordance with the statute. The value of the land is problematical. Prosecutors, in their brief, inferentially but without proof, place it far beyond the charges. Until the bill to foreclose the equity of redemption was filed, their attitude seems to have been quite otherwise. But all of this is irrelevant to the point under discussion. The township authorities had the right, under the 1936 statute, to take over the bonds at a price fixed by them, and they exercised that right. The assessed value of the property was "land $4,650, improvements $2,800, total $7,450." The municipal liens charged against the property at the time of the tax sale were $21,594.23, which was supplemented at the time of the assignment to Dickerson by the taxes of 1935,

$382.19; of 1936, $466.37; and the first half of 1937, $237.10; amounting in all to $22,679.89, which, under chapter 124, section 1, *Pamph. L.* 1928 (*R. S.* 1937, 54:5-113), being in excess of the assessed value, left the township with authority to assign the certificate, with subsequent liens, for a sum not less than the assessed value. Taking the value of the bonds at the prosecutors' figure of $58, Dickerson paid in market value of the bonds, $8,700; in cash, $1,085.66; total, $9,785.66, a price greater than the assessed value. (The foregoing figures are taken from prosecutor's brief. Our understanding of the record is that the certificate was assigned for the consideration of the bonds and of $238.67 in cash. The discrepancy does not affect the result. $8,700 plus $238.67 equals $8,938.67, a sum greater than the assessed value.) There was legal consideration and consideration which, under the statutes and the proofs, was adequate. Notice of the proposed assignment was given to the owner by mailing, posting and newspaper advertisement.

Finally, the *R. S.* 1937, 54:5-85, relating to the suit in equity to foreclose the right of redemption, which has been interrupted by the proceedings before us, provides: "The provisions of this article shall be liberally construed as remedial legislation to encourage the barring of the right of redemption by suits in the Court of Chancery and for the decreeing of marketable titles therein." The opportunities which prosecutors had, and neglected, to avoid the foreclosure, the indifference with which they permitted the tax debt to amass, their silence and inaction when a new investor was hesitant, in prosecutors' interest, about committing his capital to the venture, are illustrative of those conditions which doubtless induced the legislature to enact this statutory direction. If it be said that the township has had benefit of the settlement and that it is not concerned with the outcome of this litigation, let it be added that the acceptance of that subtle suggestion as persuasive reasoning would adversely affect all future municipal sales of tax title certificates.

The writ will be dismissed, with costs.